**Exhibit G to Complaint**

*U.S. ex rel. Roark, et al. v. Medical University of South Carolina, et. al.*

<u>EXECUTION VERSION</u>

## **SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is entered into between and among (i) the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); (ii) the District of Columbia (the "District"); (iii) the Commonwealth of Virginia ("Virginia") (collectively with the District and the United States, the "Government Parties"); (iv) CNMC (defined below); and (v) Relator James A. Roark ("Relator") (all collectively, the "Parties"), by and through their authorized representatives.

RECITALS

A. As used herein the term "CNMC" refers collectively to (i) Children's Hospital, a corporation formed under the laws of the District of Columbia, (ii) Children's National Medical Center, a corporation formed under the laws of the District of Columbia, (iii) Children's Research Institute, a corporation formed under the laws of the District of Columbia, and (iv) board members, officers, and relevant employees of these entities as specifically identified by CNMC's counsel to the United States on April 21, 2015, and to the District and Virginia on May 1, 2015.

B. On or about April 25, 2014, Relator filed an action under seal against Children's Hospital, Children's National Medical Center, and certain other related defendants in the United States District Court for the District of Columbia captioned *United States ex rel. Roark v. Children's Hospital et al.*, Civ. A. No. 14-0616 (RJL) (D.D.C.), pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b) (the "Civil Action"). The United States has intervened with respect to certain claims asserted in the Civil Action.

C. The Government Parties contend that CNMC submitted or caused to be submitted claims for payment, or statements material to claims, to the Children's Hospitals Graduate

Exhibit G

Medical Education Payment Program, Section 340E of the Public Health Service Act, 42 U.S.C. § 256e, as amended (the "CHGME Program"), the Medicare program (Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1) ("Medicare") and the Medicaid programs (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5) of the District and Virginia (respectively, "District Medicaid" and "Virginia Medicaid" and collectively, "Medicaid").

    D.    The Bureau of Health Workforce within the Health Resources and Services Administration ("HRSA"), a component of HHS, administers the CHGME Program to provide federal funds to the nation's freestanding children's hospitals to help them maintain their graduate medical education ("GME") programs. Freestanding children's hospitals receive little or no federal GME support under Medicare because GME funding is tied to the number of Medicare beneficiaries being treated at the hospital. Freestanding children's hospitals generally do not provide care to patients eligible to receive Medicare. The CHGME Program was created to address this disparity in federal GME support between freestanding children's hospitals and other teaching hospitals. Using annual data from applications, the CHGME Program calculates the payments that each hospital will receive for direct medical education and indirect medical education.

    E.    Specifically, the Government Parties contend that they have certain civil and administrative claims against CNMC arising from the following alleged conduct:

    i.    For federal fiscal years ("FFY") 2007 through and including FFY 2014 (*i.e.*, the years beginning October 1, 2007, and ending September 30, 2014), CNMC submitted an inaccurate total number of "available beds" on its applications to HRSA when CNMC knew or should have known that the data from those applications would be used together with other

|     |     |
| --- | --- |
|     | data to determine the amount that CNMC would be paid under the CHGME Program. CNMC's available bed data led it to receive overpayments from the CHGME Program during the referenced federal fiscal years. |
| ii. | The Government Parties also contend that the cost report CNMC submitted to District Medicaid for hospital fiscal year ("HFY") 2006 allocated costs between and among certain research and operating cost centers differently than those same costs were allocated in CNMC's submissions to the HHS Division of Cost Allocation ("DCA"). This discrepancy caused CNMC to receive certain overpayments on reimbursements from District Medicaid during the period from April 1, 2010, to December 28, 2012. |
| iii. | The Government Parties further contend that the cost reports that CNMC submitted to Virginia Medicaid for HFY 2005 through and including HFY 2009 allocated costs between and among certain research and operating cost centers differently than those same costs were allocated in CNMC's submissions to DCA. This discrepancy caused CNMC to receive certain overpayments on reimbursements from Virginia Medicaid during these fiscal years. |
| iv. | Lastly, the Government Parties also contend that the cost reports that CNMC submitted to Medicare for HFY 2005 through and including HFY 2009 allocated costs between and among certain research and operating cost centers differently than those same costs were allocated in CNMC's |

submissions to DCA. This discrepancy caused CNMC to receive certain overpayments on reimbursements from Medicare during these fiscal years.

The conduct alleged in this Paragraph E is hereinafter referred to as the "Covered Conduct."

F. This Agreement is made in compromise of disputed claims. It is not, and should not be construed to be, a concession by the Government Parties that their claims against CNMC are not well founded. Similarly, this Agreement is not, and should not be construed to be, an admission of any facts or wrongdoing by CNMC.

G. As part of the Civil Action, Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

H. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows.

## TERMS AND CONDITIONS[1]

1. CNMC shall pay the United States $12,604,333.18 (twelve million, six hundred and four thousand, three hundred and thirty-three dollars and eighteen cents) no later than 10 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the U.S. Attorney's Office for the District of Columbia.

2. CNMC shall pay the District $341,145.38 (three hundred and forty-one thousand, one hundred and forty-five dollars and thirty-eight cents) no later than 10 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the District's Office of the Attorney General.

---

[1] The payments described in Paragraphs 1 to 3 are collectively referred to herein as the "Settlement Amount."

3. CNMC shall pay Virginia $45,418.99 (forty-five thousand, four hundred and eighteen dollars and ninety-nine cents) no later than 10 days after the Effective Date of this Agreement pursuant to written instructions provided by the Virginia Office of the Attorney General.

4. Conditioned upon the United States receiving that portion of the Settlement Amount from CNMC described in Paragraph 1 above and, as soon as feasible after receipt, the United States shall pay $1,890,649.98 (one million, eight hundred and ninety thousand, six hundred and forty-nine dollars and ninety eight cents) to Relator by electronic funds transfer to the Harvey J. Volzer Trust Account.

5. Subject to the exceptions in Paragraph 7 below (concerning excluded claims), and conditioned upon CNMC's full payment of the Settlement Amount:

(i) the United States releases CNMC from all civil or administrative monetary claims the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and/or the common law theories of payment by mistake, unjust enrichment, and fraud;

(ii) the District releases CNMC from all civil or administrative monetary claims the District has for the Covered Conduct under (a) the District False Claims Act, D.C. Code § 2-381.01, *et seq.*; (b) to the extent authorized by law under the Federal False Claims Act, 31 U.S.C. §§ 3729-3733; the Federal Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Federal Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and/or (c) the common law theories of payment by mistake, unjust enrichment, and fraud; and

(iii)     Virginia releases CNMC from all civil or administrative monetary claims Virginia has for the Covered Conduct under (a) Virginia Code Annotated § 32.1-312, § 32.1-313, and § 8.01-216.1, *et seq.*; (b) to the extent authorized by law under the Federal False Claims Act, 31 U.S.C. §§ 3729-3733; the Federal Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Federal Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and/or (c) the common law theories of payment by mistake, unjust enrichment, and fraud.

6.     Subject to CNMC's full payment of the portion of the Settlement Amount to the United States, as described in Paragraph 1 above, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases CNMC and all of its other current and former officers, directors, employees, representatives and agents from any and all civil, administrative or any other claim (including attorney's fees, costs, and expenses of every kind and however denominated) that the Relator has asserted, could have asserted, or may assert in the future against CNMC or any of its current and former officers, directors, employees, representatives and agents, including, but not limited to, any claim under the False Claims Act, 31 U.S.C. §§ 3729-3733, or any other legal or equitable authority, for or relating to the Covered Conduct, the Civil Action, attorney's fees, expenses and costs pursuant to 31 U.S.C. § 3730(d)(1), or any other matter or conduct whatsoever.

7.     Notwithstanding the releases given in Paragraphs 5 and 6 of this Agreement, or any other term of this Agreement, the following claims of the Government Parties are specifically reserved and are not released:

   a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code), the District's revenue code (D.C. Code tit. 47, D.C. Mun. Regs. tit. 9, and District of

    Columbia Income and Franchise Tax Act of 1947, as amended), or Title 58.1 of the Code of Virginia (Tax Code of Virginia);

b.  Any criminal liability;

c.  Except as explicitly stated in this Agreement, any administrative liability, including but not limited to, permissive or mandatory exclusion from Federal or state health care programs by the District, Virginia, or the United States;

d.  Any civil or administrative liability that any person or entity has or may have to Virginia or the District or to individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraphs 5 and 6 above, including, but not limited to, any and all of the following claims: (i) state or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

e.  Any liability which may be asserted on behalf of any other payors or insurers, not specifically stated in this Agreement, including those that are paid by District Medicaid or Virginia Medicaid on a capitated basis;

f.  Any liability to the Government Parties (or their agencies) for any conduct other than the Covered Conduct;

g.  Any liability based upon obligations created by this Agreement;

h.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including, but not limited to, the quality of goods or services provided by CNMC;

i.  Any liability for failure to deliver goods or services due;

      j.      Any liability for personal injury or property damage or for other consequential damages; and

      k.      Any liability of individuals other than the individuals included in the definition of CNMC as defined in Paragraph A above.

8.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 4, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the Government Parties and their agencies, officers, agents, employees, and servants, from any claims arising from the Covered Conduct, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9.      Virginia expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against CNMC and/or its officers, directors, and employees from Virginia Medicaid (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) or 42 U.S.C. § 1320a-7(b) (permission exclusion).

10.      Subject to the dismissal of the Civil Action pursuant to Paragraph 16 below, CNMC fully and finally releases the Government Parties and their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CNMC has asserted, could have asserted, or may assert in the future against the Government Parties and their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the Government Parties' investigation and prosecution thereof.

11. CNMC waives and shall not assert any defenses CNMC may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution, or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the Government Parties concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12. Conditioned upon the dismissal of the Civil Action as provided for in Paragraph 18 below, CNMC fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CNMC has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct, the Civil Action and the Relator's investigation and prosecution thereof.

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or Medicaid contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer), related to the Covered Conduct; and CNMC agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct and not to appeal any such denials of claims.

14. CNMC agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the

regulations and official program directives promulgated thereunder; and the uniform grants administration regulations, 45 C.F.R. part 74, and Office of Management and Budget Circular A-122) incurred by or on behalf of CNMC, its present or former officers, directors, employees, shareholders, and agents in connection with:

i. the matters covered by this Agreement;

ii. the Government Parties' audit(s) and civil investigation(s) of the matters covered by this Agreement;

iii. CNMC's investigation, defense, and corrective actions undertaken in response to the Government Parties' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

iv. the negotiation and performance of this Agreement; and

v. the payments CNMC makes to the Government Parties pursuant to this Agreement and any payments that the United States may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs"), and for government grant purposes under the CHGME Program.

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by CNMC, and

    CNMC shall not charge such Unallowable Costs directly or indirectly to any contracts or grants with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by CNMC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, FEHBP Programs, or CHGME Program.

 c. Treatment of Unallowable Costs Previously Submitted for Payment: CNMC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, and the CHGME Program, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CNMC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  CNMC agrees that the United States, at a minimum, shall be entitled to recoup from CNMC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

    Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the

        affected agencies. The United States reserves its rights to disagree with any calculations submitted by CNMC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on CNMC or any of its subsidiaries or affiliates' cost reports, cost statements, information reports, grant applications or request for grant payments.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the Government Parties to audit, examine, or re-examine CNMC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

    15.    CNMC expressly warrants that it has reviewed its financial condition and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(B)(ii)(I), and shall remain solvent following payment of the Settlement Amount and compliance with this Agreement. Further, the Parties expressly warrant that, in evaluating whether to execute this Agreement, the Parties (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to CNMC within the meaning of 11 U.S.C. § 547(c)(1), and (b) have concluded that these mutual promises, covenants and obligations do in fact, constitute such a contemporaneous exchange.

    16.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent expressly provided for herein.

    17.    CNMC agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors.

18. Upon the United States' receipt of the payment described in Paragraph 1, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) with prejudice to the Relator in all respects, with prejudice to the United States as to claims against CNMC arising from the Covered Conduct, and without prejudice to the United States in all other respects.

19. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement shall be (i) when the dispute includes the United States, the United States District Court for the District of Columbia or the United States Court of Federal Claims; or (ii) when the dispute does not include the United States, a state court in Virginia or local court in the District.

22. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24. Undersigned signatories represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.  This Agreement is binding on CNMC's successors, transferees, heirs, and assigns.

27.  This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28.  All parties consent to the Government Parties' disclosure of this Agreement, and information about this Agreement, to the public.

29.  This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date" of this Agreement).

30.  Facsimiles of signatures and electronic mail that attach signatures in electronic form shall constitute acceptable, binding signatures for purposes of this Agreement.

< REMAINDER OF PAGE INTENTIONALLY LEFT BLANK>

<SIGNATURE PAGES TO FOLLOW>

FOR THE UNITED STATES OF AMERICA:

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

| | |
|---|---|
| VINCENT H. COHEN, JR.<br>Acting United States Attorney | By: _____<br>ROBERT K. DECONTI<br>Assistant Inspector General for Legal Affairs |
| DANIEL F. VAN HORN<br>Chief, Civil Division, U.S. Attorney's Office | Office of Counsel to the Inspector General<br>Office of Inspector General<br>U.S. Dep't of Health & Human Services |

By: _____
   BRIAN P. HUDAK
   Assistant United States Attorney        Dated: _____
   555 Fourth Street, NW
   Washington, DC 20530
   (202) 252-2549

MICHAEL D. GRANSTON
DANIEL ANDERSON
MARY CHRIS DOBBIE
Attorneys, Commercial Litigation Branch
601 D Street, NW, Room 9928
Washington, DC  20004
(202) 353-1750


Dated: _____

*Attorneys for the United States of America*

FOR THE DISTRICT OF COLUMBIA:

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division


By: _____
    BENNETT RUSHKOFF
    Section Chief
    Public Advocacy Section


By: _____
    JANE DRUMMEY
    Assistant Attorney General
    441 Fourth Street, NW
    Washington, DC 20001
    (202) 727-2658


Dated: _____

FOR THE COMMONWEALTH OF VIRGINIA:

By: _____  By: _____
    RANDALL L. CLOUSE            CYNTHIA B. JONES
    Director and Chief           Director
    Health Care Fraud & Elder Abuse   Department of Medical Assistance Services
    Virginia Attorney General's Office

                                                                              Dated: _____

Dated: _____

By: _____
    LINDA L. BRYANT
    Deputy Attorney General
    Criminal Justice and Public Safety
    Virginia Attorney General's Office

Dated: _____

FOR CHILDREN'S HOSPITAL, CHILDREN'S NATIONAL MEDICAL CENTER, and <u>CHILDREN'S RESEARCH INSTITUTE:</u>

By: _____     By: _____
    GADI WEINREICH                              MARY ANNE HILLIARD
    CATHERINE L. HESS                           Chief Legal Officer
    ERIN M. SHOUDT
    Dentons US LLP
    1301 K. Street, NW, Suite 600
    Washington, DC 20005                        Dated: _____
    (202) 408-6400

Dated: _____

*Attorneys for Children's Hospital, Children's National Medical Center, and Children's Research Institute*

FOR RELATOR JAMES A. ROARK, SR.:

By: _____     By: _____
    JAMES A. ROARK, SR.                                  HARVEY J. VOLZER
    4661 Hidden Lake Drive                              Shaughnessy, Volzer & Gagner, P.C.
    Port Orange, FL 32129                                216 S. Patrick Street
                                                                             Alexandria, VA 22314
                                                                             (703) 549-0446

Dated: _____

                                                                             Dated: _____

                                                                             *Attorneys for Relator James A. Roark, Sr.*